UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Andre Laws, ) | Civil Action No.: 1:16-1518-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. | |

Plaintiff Andre Laws ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title XVI of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Shiva V. Hodges, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #20]. Plaintiff now seeks a second remand of this case for further administrative proceedings.

**Factual Findings and Procedural History**

Plaintiff applied for DIB on August 3, 2009, alleging an onset date of May 26, 2009. Plaintiff's application was denied initially and upon reconsideration. On October 4, 2011, Plaintiff had a hearing before an Administrative Law Judge, but ultimately the ALJ determined Plaintiff was not disabled. [ECF #9-2]. The case was subsequently remanded back to the Appeals Council from the United States District Court for the District of South Carolina to reconsider claimant's mental impairments and subjective complaints. Plaintiff again testified at a hearing on June 25, 2015. A vocational expert was

present at the hearing. Plaintiff's Title II application that he filed on June 13, 2013 was also consolidated with this remanded claim.

Plaintiff's background and medical history have previously been set forth in the R&R, as well as in the R&R from Plaintiff's prior case. *See Laws v. Commissioner of Social Security Administration*, No. 1:13-1309-RBH (D.S.C. July 17, 2014). Briefly stated, in 1990, Plaintiff sustained gunshot wounds to his left lower extremity, right forearm, left forearm, and left thigh in an attack that occurred while he was stationed at Fort Hood in Texas. [ECF #9-7, Ex. 1F]. In July of 2008, Plaintiff had surgery on his left foot and ankle. [ECF #9-7, Ex. 2F]. Later that year, Plaintiff went for a rehabilitation consultation, which included a nerve conduction study and x-rays. These results revealed no acute abnormality but did show prominent deformity in the distal shafts of the left tibia and fibula, as well as osteodegenerative changes. [ECF #9-7, Ex. 2F]. Plaintiff was diagnosed with degenerative joint disease and diminishing ankle range and distal tibial angulation. [ECF #9-7, Ex. 2F]. In May 6, 2009, Plaintiff presented to Dr. Nosizwe A. Sellers for left ankle and foot problems because he had difficulty standing after sitting for a period of time, as well as he was frequently tripping over his feet. [ECF #9-7, Ex. 1F]. Dr. Sellers observed Plaintiff and noted he had an antalgic gait with foot drop; abnormality of the lateral foot and ankle, hammerfoot, and tenderness in the posterial ankle, Achilles tendon and metatarsals. [ECF #9-7, Ex. 1F]. Plaintiff was diagnosed with Achilles tendinitis and post-traumatic arthralgia. [ECF #9-7, Ex. 1F]. Plaintiff was referred to Dr. Gene Massey, as well as prescribed physical therapy and a controlled ankle motion walker. [ECF #9-7, Ex. 1F]. Over the course of the remainder of that year, Plaintiff continued to suffer from pain in his left heel, foot and ankle. [ECF #9-7, Ex. 1F]. In June of 2009, Dr. Sellers provided Plaintiff with a note indicating Plaintiff was not to return to work until July 8, 2009. [ECF #9-7, Ex. 1F]. Moreover, in July of 2009, Dr. Robert Santrock, who

performed surgery on his left foot and ankle in 2008, opined that Plaintiff qualified for 100% disability and compensation from the Office of Veterans Affairs (the "VA"), stating that Plaintiff could not return to work without significant pain or dysfunction, despite giving it a "valiant try." [ECF #9-7, Ex. 2F]. Later in that month, Dr. Santrock provided Plaintiff with a letter stating Plaintiff was at maximum medical improvement, had a 100% disability of the left lower extremity, could not stand more than fifteen minutes without pain, and had drop foot and poor sensation. [ECF #9-7, Ex. 2F]. At the end of 2009, Plaintiff presented to Dr. Harriet R. Steinert for a neurological consultative examination with complaints related to his left foot, as well as lumbar pain and a tingling sensation in his left hand. His examination was generally normal, but he was assessed by Dr. Steinert with decreased motor strength and sensation in Plaintiff's dominant left hand, left foot drop, and pain in his lower left extremity and hand. [ECF #9-7, Ex. 6F]. State agency physician Dr. Elva Stinson completed an RFC assessment on Plaintiff in December 2009 and indicated he could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk for at least two hours in an eight-hour workday; sit for about six hours in an eight-hour workday; frequently stoop, kneel, reach with left upper extremity, and perform fine fingering with the left hand, occasionally climb ramp/stairs, balance, crouch, and crawl, and never operate foot controls with the left lower extremity, climb ladder/rope/scaffold, or work on uneven terrain. [ECF #9-7, Ex. 5F].

On January 20, 2010, Dr. Douglas R. Ritz performed a mental status examination on Plaintiff. Dr. Ritz noted that Plaintiff could perform certain tasks and functions, such as cooking, grooming and household chores. He diagnosed Plaintiff with posttraumatic stress disorder and adjustment disorder with depressed mood and provided a global assessment of functioning (GAF) score of 65. [ECF #9-7, Ex. 7F]. A week later, state agency consultant Dr. Samuel Goots completed a psychiatric review form,

3

and after considering Listing 12.04 (affective disorder) and Listing 12.06 (anxiety disorder), found Plaintiff's psychiatric impairments to be non-severe, and further, that he had no restrictions in activities of daily living, mild difficulty in social functioning, mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. [ECF #9-8, Ex. 2F]. Plaintiff also sought treatment for left shoulder pain in 2010 and was diagnosed with osteoarthritis. [ECF #9-8, Ex. 9F]. In May of 2010, Dorothy Bevis at the Veterans Affairs Medical Center performed Plaintiff's mental health evaluation and found him to be neat and clean, but exhibiting a depressed mood. [ECF #9-8, Ex. 10F]. Plaintiff was assessed a GAF score of 55 by a social worker, Crystal Preston, in May of 2010. [ECF #9-8, Ex. 13F]. Dr. Sellers diagnosed Plaintiff with depression in May of 2010, as well. [ECF #9-8, Ex. 13F]. Plaintiff continued psychotherapy and other psychiatric treatment throughout 2010. [ECF #9-8, Ex. 13F]. In August of 2010, Dr. Ritz assessed Plaintiff with a GAF score of 60 and indicated that Plaintiff has had these mental symptoms for quite some time, but being that he has been able to work in a work-related setting, he hypothesized he currently was still able to do so, as well. [ECF #9-8, Ex. 14F]. On August 26, 2010, state agency consultant Dr. Samuel D. Williams completed a Psychiatric Review Technique Form ("PRTF") and concluded Plaintiff's impairments were not severe, with only mild difficulties in social functions, concentration, persistence and pace. [ECF #9-8, Ex. 15F]. That same day, Dr. Robert Heilpern completed an RFC assessment on Plaintiff indicating Plaintiff could perform the following: occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk for at least two hours in an eight-hour workday; sit for about six hours in an eight-hour workday; never push and/or pull with the left lower extremity; occasionally climb ramp/stairs; never climb ladder/rope/scaffolds; occasionally balance; frequently stoop; frequently kneel; occasionally crouch; occasionally crawl; never work on uneven terrain; frequently reach with left upper

4

extremity; and frequently perform fine fingering with the left hand. [ECF #9-8, Ex. 16F]. Plaintiff sought the care of Dr. Eric Byrd in September of 2010 who did not notice any major impairments other than those previously discussed. Plaintiff also sought the care of Dr. Mahajan in November of 2010 for a two-week history of on-and-off chest pain. This continued for another week, and nurse practitioner Julia M. Hucks, as well as Dr. Mahajan, noted Plaintiff was tender in his anterior chest wall and had epigastric tendernesss. [ECF #10-9, Ex. 29F].

On January 13, 2011, Plaintiff went to visit with Dr. Kithianis, where the doctor observed that Plaintiff denied taking his medications regularly and complained of difficulty sleeping. [ECF #9-9, Ex. 20F]. Plaintiff also reported feeling isolated. [ECF #9-9, Ex. 20F]. Plaintiff also continued with psychotherapy and mental health treatment in 2011 and was assessed a GAF score of 55 by Ms. Preston. [ECF #9-9, Ex. 20F]. Dr. Kithianis also assessed Plaintiff with a GAF score of 55 in April of 2011. [ECF #9-9, Ex. 20F]. On May 23, 2011, Plaintiff presented to nurse practitioner James A. Grzech with complaints of a headache, elevated blood pressure, and blurred vision. [ECF #10-9, Ex. 29F]. A few days later, he was still complaining of headaches and chronic pain, as well as interrupted sleep. [ECF #9-9, Ex. 20F]. On June 9, 2011, Plaintiff visited Dr. Sellers for primary care because he was having pain in his back, and pain radiating down his leg. Dr. Sellers observed that Plaintiff had left upper extremity weakness and decreased grip strength. His gait was otherwise normal, and an x-ray showed a loss of disc height at L5-S1, but no other abnormalities. During the summer and fall of 2011, Plaintiff continued to seek treatment from Dr. Kithianis. On November 29, 2011, Plaintiff sought care from Dr. Gregory J. Roberts for a gastroenterology consultation. Plaintiff complained of chronic constipation, as well as pain in his back and rectum. He was referred for a colonoscopy.

On January 4, 2012, Dr. Sellers saw Plaintiff who noted that his EMG was normal. On February

5

24, 2012, MRI results revealed that Plaintiff had degenerative disc disease with annular bulging or a broad-based disc protrusion and a posterior annular tear at L4-5. [ECF #10-8, Ex. 23F]. In March of 2012, Dr. Jacqueline Pineda stated Plaintiff had mild compression of the nerve and recommended conservative treatment for his back. [ECF #10-6, Ex. 23F]. Plaintiff also continued to seek treatment in 2012 for depression and anxiety, that according the medical records appeared to ebb and flow. On September 14, 2012, Plaintiff attended a compensation and pension examination, where he reported difficulty standing for long periods and difficulty with tasks involving reaching and lifting. [ECF #10-7, Ex. 24F]. At that time, Plaintiff had reduced flexion of his lumbar spine, and 5/5 strength on all muscle strength testing, aside from a finding of 3/5 strength with left ankle dorsiflexion. [ECF #10-7, Ex. 24F]. Otherwise, he had no muscle atrophy, and no signs of radiculopathy. [ECF #10-7, Ex. 24F]. On October 10, 2012, an occupational therapist approved Plaintiff for a shower chair, hand-held shower hose, a sock aid, and a long-handled bath sponge because Plaintiff was indicating problems with balance due to nerve damage in his foot. [ECF #10-7, Ex. 24F].

In March of 2013, Plaintiff denied taking his mental health medications regularly, indicating his mood was stable. [ECF #10-7, Ex. 24F]. On July 11, 2013, Plaintiff discussed problems he was experiencing sleeping, and his doctor indicated that these may be the result of untreated sleep apnea. [ECF #10-7, Ex. 24F]. Dr. Kithianis recommended Plaintiff consult with Dr. Sellers to obtain a replacement CPAP machine. [ECF #10-7, Ex. 24F]. He eventually received a new CPAP machine. On February 17, 2014, Plaintiff followed up with Ms. Hucks after an emergency room visit for chest pain. [ECF #10-9, Ex. 29F]. On September 10, 2014, Ms. Hucks indicated that Plaintiff showed poor compliance with treatment and did not follow a diet and exercise regimen. [ECF #10-9, Ex. 29F]. While Plaintiff complained of left leg pain and foot drop, Ms. Hucks did not observe any abnormalities.

6

[ECF #10-9, Ex. 29F]. On September 15, 2014, Plaintiff presented to Dr. Deborah Louise Mitchell for a primary care visit, and at that time complained of left lower extremity pain and slightly swelling that had onset approximately two weeks prior. [ECF #10-9, Ex. 26F]. Dr. Mitchell indicated Plaintiff had a slight limp and was favoring his left lower extremity. [ECF #10-9, Ex. 26F]. He was diagnosed with left lower extremity pain and tension headache. [ECF #10-9, Ex. 26F]. On November 10, 2014, Plaintiff presented to Ms. Hucks, complaining of right foot pain after completing four miles on an elliptical trainer. [ECF #10-9, Ex. 29F]. She observed Plaintiff was tender near his Achilles tendon. [ECF #10-9, Ex. 29F].

In March of 2015, Plaintiff had x-rays performed which showed no change in his distal left lower leg; postsurgical changes in his left great toes since May 2008, mild degenerative joint diseases and degenerative changes to his ankles. [ECF #10-9, Ex. 30F]. Plaintiff attended a consultative examination with Dr. Pravin Patel on April 2, 2015 wherein Dr. Patel observed Plaintiff was mentally clear and coherent, had multiple gunshot wound injuries to his left arm, right arm, and left leg; left shoulder bursitis, degenerative disc disease of the lumbar spine, hypertension, borderline type II diabetes; PTSD, hiatal hernia, and gastroesophageal reflux disease. [ECF #10-9, Ex. 27F]. Dr. Patel also completed a medical source statement. His statement included the following information: Plaintiff could frequently lift up to 20 pounds and could occasionally lift 21 to 50 pounds with his right hand, but could lift much less with his left hand. [ECF #10-9, Ex. 28F]. Plaintiff could frequently carry up to 10 pounds and could occasionally carry 11 to 20 pounds. [ECF #10-9, Ex. 28F]. Plaintiff could sit for approximately one hour without interruption, stand for 30 minutes without interruption, and walk 30 minutes without interruption. [ECF #10-9, Ex. 28F]. Plaintiff could sit for six hours in an eight-hour workday; could stand for one hour in an eight-hour workday; and could walk for one hour in an eight-

7

hour workday. [ECF #10-9, Ex. 28F]. Plaintiff could frequently reach overhead and in other directions, and handle, finger, feel and push/pull with his right hand. [ECF #10-9, Ex. 28F]. Occasionally, Plaintiff could reach overhead and in other directions and handle, and push/pull with his left hand. [ECF #10-9, Ex. 28F]. Plaintiff could frequently finger and feel with his left hand. [ECF #10-9, Ex. 28F]. Plaintiff could frequently use his right foot and occasionally use his left foot to operate finger controls. [ECF #10-9, Ex. 28F]. Plaintiff could frequently balance, occasionally climb stairs and ramps but not ladders or scaffolds, could stoop, kneel, crouch, and crawl, and frequently be exposed to humidity, wetness, dust, odor, fumes and other like elements. [ECF #10-9, Ex. 28F]. Plaintiff could occasionally be exposed to unprotected heights, moving mechanical parts, and could operate a motor vehicle. [ECF #10-9, Ex. 28F]. Plaintiff could shop, travel without a companion, ambulate, walk a block at a reasonable pace, use public transportation, climb a few steps at a reasonable pace with use of a handrail, prepare simple meals, and feed and care for himself. [ECF #10-9, Ex. 28F].

As previously mentioned the first ALJ to review this case issued an unfavorable decision on November 10, 2011. On March 12, 2013, the Appeals Council denied Plaintiff's request for review. Plaintiff subsequently brought an action seeking judicial review of the Commissioner's decision on May 14, 2013. On July 30, 2014, this Court issued an order reversing the ALJ's decision and remanding the case for further administrative proceedings related to claimant's mental impairments and subjective complaints. Thereafter, Plaintiff had a second hearing on June 25, 2015. At the time of Plaintiff's second hearing, Plaintiff was forty-four years old. Plaintiff has a Bachelor of Science degree in workforce education. His past relevant work includes his employment as a cemetery worker. On July 25, 2015, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act. On March 7, 2016, the Appeals Council declined to assume jurisdiction, making

the ALJ's decision the final decision of the Commissioner.

The ALJ's findings in July of 2015 were as follows:

(1) The claimant last met the insured status requirements of the Social Security Act through December 31, 2014.

(2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 26, 2009, through his date last insured of December 31, 2014 (20 C.F.R. 404.1571 *et seq.*).

(3) Through the date last insured, the claimant had the following severe impairments: multiple fractures, left lower extremity, status post gunshot wound, with residual neurological damage, including left foot drop; peripheral neuropathy; left ankle Achilles tendonitis, status post gastroc slide procedure; osteoarthritis; degenerative joint disease, left shoulder; obesity; adjustment disorder with depression; and post-traumatic stress disorder (20 C.F.R. 404.1520(c)).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

(5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a range of sedentary work as defined in 20 C.F.R. 404.1567(a) in that he could lift and carry up to ten pounds occasionally and less than ten pounds frequently; stand for about thirty minutes at one time and a total of about one hour in a workday; walk for about thirty minutes at one time and a total of one hour in a workday; and sit for about one hour at a time and a total of about six hours in a work day. He was limited to frequent pushing and pulling with the right upper extremity and no more than occasional pushing and pulling with the dominant left upper extremity. He could frequently balance and occasionally climb ramps and stairs, but never stoop, kneel, crawl, or climb ladders, ropes and scaffolds. He could frequently reach overhead and in any other direction or perform gross handling with the right upper extremity, but no more than occasionally perform those tasks with the dominant left upper extremity. He could frequently perform fine motor tasks with the bilateral upper extremities. He could frequently use the right lower

extremity to operate foot pedals or other controls and only occasionally do so with the left lower extremity. He had to avoid exposure to unprotected heights, vibration, dangerous machinery, and uneven terrain and concentrated exposure to dust, fumes, gases, odors, other respiratory irritants, extremes of humidity, and extremes of temperature. He had to elevate his feet approximately one foot off the floor while sitting for about an aggregate for two hours in the workday. Due to his mental impairments, he was further restricted to simple, routine tasks not requiring ongoing interaction with the general public.

(6) Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).

(7) The claimant was born on July 16, 1970 and was 44 years old, which is defined as a younger individual age 18-44, on the date last insured (20 C.F.R. 404.1563).

(8) The claimant has more than a high school education and is able to communicate in English (20 C.F.R. 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569 (a)).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from May 26, 2009, the alleged onset date, through December 31, 2014, the date last insured (20 C.F.R. 404.1520(g)).

[ECF #10-1, pp. 31-46].

Plaintiff sought review by the Appeals Council, but the Appeals Council denied his request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for

purposes of judicial review. On May 10, 2016, Plaintiff filed his Complaint in this Court. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #16; ECF #18], and the Magistrate Judge issued a Report and Recommendation on February 15, 2017, recommending that the Commissioner's decision be affirmed. [ECF #20, p. 58]. Plaintiff filed objections on March 1, 2017. [ECF #22]. Defendant replied to these objections on March 15, 2017. [ECF #23].

## Standard of Review

### I. Judicial Review of the Commissioner's Findings

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not

11

abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

Here, after reviewing the record, including the briefs filed by the parties, the Magistrate Judge recommends affirming the decision of the Commissioner. Plaintiff raises the following objections to the R&R: (1) the ALJ erred in failing to account for medical evidence documenting Plaintiff's problems with focus and concentration and greater restrictions of his upper right extremity; and (2) the ALJ did

not properly consider the VA opinion evidence. [ECF #22, pp. 1-5]. This Court will analyze the merit of each objection below.

## Analysis

### A. RFC Assessment

Plaintiff objects to the recommendation by the Magistrate Judge that the ALJ made a proper RFC assessment. Specifically, Plaintiff argues that the ALJ did not consider medical records that tend to suggest Plaintiff had limitations with concentration, persistence, and pace; and further, that the ALJ did not adequately explain how an alleged "improvement in memory" relates to concentration, persistence and pace. The Magistrate Judge considered the fact that, unlike in *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015), the ALJ actually included mental limitations in the hypothetical posed to the vocational expert during the hearing. The Magistrate Judge further reconciled the fact that the RFC assessment limited Plaintiff to "simple, routine tasks," which differs from the ability to stay on task as described in *Mascio*, because she recommended finding that the ALJ sufficiently explained why the record did not support additional mental limitations. With respect to the right hand numbness, the Magistrate Judge recommended finding the ALJ's decision was supported by substantial evidence because the record does not support a finding that he had significant injury to his right hand.

Social Security Ruling 96-8p explains how adjudicators should assess a claimant's residual functional capacity ("RFC"). First, an ALJ must identify the individual's functional limitations or restrictions and assess work-related abilities on a function-by-function basis. SSR 96-8p. The ALJ must also determine how an individual's limitations or impairments affect his ability to meet the physical and mental demands of work on a regular and continuing basis. SSR 96-8p. Upon completion and explanation of this analysis, the RFC may be expressed in terms of exertional levels of work, and the

13

assessment must include a discussion describing how the evidence in the record supports the RFC, specifically citing to medical facts and non-medical evidence. SSR 96-8p. This requires the ALJ not only to provide a narrative discussion describing how all relevant evidence in the record supports the conclusion made and must cite to specific medical and non-medical evidence, but the ALJ must also consider and explain how any material inconsistencies or ambiguities within the record were resolved. SSR 96-8p.

Here, the ALJ made the determination that Plaintiff could perform less than the full range of sedentary work and placed the additional restrictions within the RFC. [ECF #10-1, p. 36]. Defendant acknowledges this fact, but also points out that this does not automatically equate to a finding of disabled. SSR 96-9p. Plaintiff argues that the RFC determination is flawed because: (1) the ALJ did not account for moderate difficulties in concentration; and (2) the ALJ did not consider evidence regarding the limitation of Plaintiff's right upper extremity.

1. Concentration, Persistence and Pace

Plaintiff argues that contrary to *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015), the ALJ did not adequately address Plaintiff's problems with focus and concentration due to his Post Traumatic Stress Disorder and sleeping issues, including sleep apnea. The Magistrate Judge determined that Plaintiff's case was distinguishable from *Mascio*. Specifically, the Magistrate Judge explained that unlike the ALJ in *Mascio*, the ALJ in Plaintiff's case posited a hypothetical question to the vocational expert (the "VE"), which included mental limitations. From there, the ALJ relied upon the VE's response to support a finding that Plaintiff retained the ability to perform jobs that existed in significant numbers in the national economy. Still, the Magistrate Judge also acknowledged that *Mascio* found that an ALJ cannot account for moderate limitations in concentration, persistence, and pace by restricting

14

a hypothetical to simple, routine tasks, or unskilled work; rather, the ALJ must explain his or her reasons for concluding that Plaintiff's moderate difficulties in concentration, persistence, or pace did not affect his ability to work. [ECF #20, p. 45]. The Magistrate Judge then reviewed the ALJ's decision as a whole to find that the ALJ adequately sustained his conclusion that the record did not support additional mental restrictions. [ECF #20, p. 46].[1]

In his objections, Plaintiff argues that the ALJ appeared to focus his analysis on an alleged improvement in memory, but that this does not necessarily translate to an improvement in concentration. Plaintiff points to records showing that doctors indicated he had poor concentration and focus in July of 2010, April of 2011 and July of 2013. [ECF #22, p. 5]. It is Plaintiff's contention that while the ALJ cited to notations in the record that might suggest intact concentration, the ALJ did not include any analysis attempting to resolve an obvious conflict in the record in that other records show lack of concentration. [ECF #22, p. 5]. This Court's independent review of the record reveals that while there are medical records that suggest Plaintiff had poor concentration, the ALJ's decision reflects that all of the record evidence was considered as a whole, including hearing testimony evidence. Further, the ALJ explained his reasons for concluding that Plaintiff's mental impairments caused only mild limitation and did not otherwise require additional mental restrictions. As explained by the Magistrate Judge, the ALJ noted specific medical records he found compelling, as well as Plaintiff's statements to his physicians regarding his activity level and how he was feeling, as well as the fact that

---

[1] For example, the Magistrate Judge noted that the ALJ mentioned Dr. Ritz's finding that Plaintiff had intact concentration and improved memory, and that Plaintiff stopped working in May of 2009 due to physical, not mental limitations, and that his mental limitations did not preclude similar work at the time. The Magistrate Judge also found significant the ALJ's remarks that Plaintiff reported to his health providers that he was feeling better and being more active, despite not routinely taking his medications. As far as his daily routine, the ALJ indicated that Plaintiff could perform significant personal and household tasks.

15

he was not routinely taking his medications. [ECF #20, pp. 46-47]. The Magistrate Judge also concluded that the ALJ's detailed analysis of the personal and household chores and tasks Plaintiff could perform further supported his conclusion. [ECF #20, p. 47]. This Court finds that the ALJ adequately supported and explained his conclusion with regard to concentration, persistence, and pace as required by *Mascio*, and substantial evidence exists in the record to support the ALJ's decision.

2. Right Hand Numbness

Plaintiff's next objection involves the ALJ's determination that while Plaintiff was limited to occasionally performing tasks with his dominant left upper extremity, he could frequently perform reaching or performing gross handling with his right upper extremity, despite the fact that he had documented chronic right hand numbness. In his initial brief, Plaintiff argued that the ALJ's failure to consider this chronic right hand issue could be "vocationally fatal" under SSR 96-9p. In this case, the ALJ posed a hypothetical question to a vocational expert that Plaintiff argues did not take into account this right hand numbness limitation.

After reviewing the record, the Magistrate Judge determined that, even though Plaintiff suffered a gunshot wound to his right arm, the medical evidence did not support a finding that the injury caused a medically-determinable impairment that could cause right hand numbness. The Magistrate Judge considered the fact that Dr. Sellers stated Plaintiff's EMGs were "always normal." Furthermore, the Magistrate Judge considered the fact that the ALJ based his RFC assessment primarily on Dr. Patel's functional assessment. As noted above in SSR 96-9p, if a limitation is "less significant," the ruling contemplates consulting a vocational resource. The Magistrate Judge explained that the ALJ did in fact consult a vocational expert in order to comply with his burden and cite examples of jobs Plaintiff could perform.

16

SSR 96-9p includes an explanation of the Social Security Administration's policy regarding the impact of an RFC that provides for less than a full range of sedentary work. SSR 96-9p states in relevant part:

> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. For example, example 1 in section 201.00(h) of appendix 2, describes an individual who has an impairment that prevents the performance of any sedentary occupations that require bilateral manual dexterity (i.e., "limits the individual to sedentary jobs which do not require bilateral manual dexterity"). When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

This Court understands this explanation to refer to claimants who do not have full use of both hands (i.e. if you have a limitation with one hand, a claimant would not have full use of "both" hands). This Court has reviewed the record and considered both the Magistrate Judge's analysis of the ALJ's consideration of the right hand numbness issue and Plaintiff's objection to the Magistrate Judge's recommendation. This Court notes that the record is quite extensive and contains medical evidence and notes from physicians that suggest some limitation with the right hand, while other notes suggest that he maintained the ability to use his right hand in a job setting. While Plaintiff argues that the issue is that the ALJ did not fully explain the right hand numbness limitations, this Court agrees with the Magistrate Judge that the ALJ properly consulted with a vocational expert regarding the issues related to the use of his hands.

**B. Disability Decision from the VA**

Plaintiff's final objection is that the Magistrate Judge erred in finding that the ALJ adequately considered the weight to afford the VA's findings. On November 24, 2009, the VA determined Plaintiff

17

was entitled to individual unemployability, effective May 9, 2009. The decision stated that Plaintiff was granted "entitlement to individual unemployability" because he has been found "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." [ECF #9-5, Ex. 9D]. The VA further indicated Plaintiff was to be considered totally and permanently disabled due to his service-connected disabilities. [ECF #9-5, Ex. 10D]. Plaintiff argues that the ALJ did not properly evaluate this decision in that the ALJ failed to explain why he chose to deviate from the VA's finding. After reviewing the ALJ's analysis, the Magistrate Judge determined that, consistent with *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir. 2012), the ALJ adequately considered the VA's rating.

In *Bird v. Commissioner of Social Security Administration*, the Fourth Circuit Court of Appeals previously held that when the SSA is making a disability determination, the SSA must give substantial weight to a VA disability rating. 699 F.3d 337, 343 (4th Cir. 2012). In *Bird*, the ALJ found that the VA rating decision was not relevant to evaluate the claimant's pre-DLI (date last insured) condition because the decision was effective more than a year after the claimant's DLI. *Id.* at 343-344. The Fourth Circuit also stated, however, that due to the fact that the SSA employs different standards than the VA in evaluating disabilities, an ALJ may give less weight to a VA's disability rating when the record clearly demonstrates that such a deviation may be appropriate. *Id.* at 343.

A review of the ALJ's decision suggests that the ALJ complied with the holding in *Bird*, despite the fact that ultimately the ALJ did not come to the same conclusion as the VA in this case. *See generally Rosales v. Colvin*, No. 6:14-CV-04265, 2015 WL 9598864, *9 (D.S.C. Dec. 16, 2015) (indicating the need to demonstrate why a deviation from the VA opinion is appropriate when explaining that the ALJ did not discuss why or how he assigned weight to the VA rating decision). The

18

ALJ first considered not only the disability rating, but the specific impairments related to each injury. He noted that the VA definition of "disability" relates to the capacity for active military service, as compared to the definition under the Social Security Act. The Magistrate Judge noted that this statement was in error; however, the Magistrate Judge found this error harmless because the ALJ gave additional substantial reasons for deviating from the VA's findings.

This Court agrees with the Magistrate Judge that the ALJ provided several reasons for his decision to deviate from the VA's finding. First, the ALJ explained that the ratings for each specific impairment were less than total limitations of function.[2] The ALJ next considered those ratings, along with the other medical evidence in the record. The ALJ concluded that the objective clinical findings and treatment notes did not support the rating levels given by the VA. Specifically, he noted the rather mild findings in the treatment notes, as well as the specific and detailed findings of the consultative examiners, including Dr. Patel's recent medical report. The ALJ further stated that these examinations do not support the degree of limitation the VA identified, and moreover, that the RFC adequately addresses the limitations described in the VA impairment assessment. Plaintiff argues that the ALJ found Plaintiff to have "moderate mental limitations" but deviated from the VA assessment because of "mild mental status examinations." This Court notes that the ALJ determined Plaintiff did not demonstrate *no more than* moderate difficulties in concentration, persistence, and pace, but otherwise he had mild restrictions in daily living and no episodes of decompensation for extended duration. This Court further finds that the ALJ's explanation for deviating from the VA's findings are detailed and supported by substantial evidence, which he cited to in the record. Upon review of the ALJ's decision

---

[2] The ratings the ALJ is referencing are found in Exhibit 20F, and include a lower leg muscle injury (40% disability rating), PTSD (30% disability rating), superficial scars (with a 20%, 10% and 0% disability rating), thigh muscle injury (10% disability rating), and a foot condition (10% disability rating).

19

in tandem with Plaintiff's medical records, it appears that the ALJ provided sufficient justification for his decision to deviate from the VA's disability rating. *Bird*, 699 F.3d 337, 343.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court overrules Plaintiff's objections [ECF #22] and adopts and incorporates by reference the recommendation of the Magistrate Judge. [ECF #20]. The Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
July 11, 2017  R. Bryan Harwell
 United States District Judge